1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11   KATHLEEN GIVANT,                      No. 2:11-cv-03158-MCE-JFM

12           Plaintiff,

         v.                                MEMORANDUM AND ORDER
13
     VITEK REAL ESTATE INDUSTRIES
14   GROUP, INC. dba VITEK MORTGAGE
     GROUP, a California Corporation;
15   EVERHOME MORTGAGE COMPANY, a
     Florida Corporation; and all
16   persons or entities unknown
     claiming any legal or equitable
17   right, title, estate, lien or
     interest in the property described
18   in this complaint adverse to Pl's
     title thereto, and DOES 1-2
19   inclusive,

20           Defendants.

21
                          ----oo0oo----
22

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

                                    1

1    Defendants Vitek Real Estate Industries Group, Inc.

2  ("Vitek") and Everhome Mortgage Company ("Everhome") have each

3  filed a Motion to Dismiss Plaintiffs' First Amended Complaint

4  (ECF No. 14) pursuant to Fed. R. Civ. P. 12(b)(6).[1]  For the

5  reasons that follow, both Vitek's and Everhome's Motions to

6  Dismiss (ECF Nos. 19 and 29) are GRANTED with leave to amend.[2]

7

8                        **BACKGROUND**[3]

9

10    Plaintiff Kathleen Givant ("Givant") alleges that she was

11  the owner of real property in The Sea Ranch,[4] California (the

12  "Property"), which she states she owned free and clear and which

13  was appraised for $1,180,000.  (FAC, ¶ 10, 11, 14.)   In November

14  2007, Givant contacted an agent for Vitek, a home mortgage

15  lender, seeking a loan to provide capital for a new business

16  venture.  (Id. at ¶ 12.)

17  ///

18  ///

19  ///

20

21      [1] Unless otherwise stated, all further references to "Rule"
    or "Rules" are to the Federal Rules of Civil Procedure.
22

23      [2] Because oral argument would not be of material assistance,
    the Court ordered this matter submitted on the briefing.  E.D.
    Cal. R. 230(g).
24

25      [3] The following facts are taken from Plaintiff's First
    Amended Complaint (ECF No. 14) ("FAC"). Page references will be
26  to the Court's ECF pagination.  For the purposes of this Motion,
    the Court accepts Plaintiff's facts as true and makes all
27  inferences in the light most favorable to Plaintiff.

28      [4] The Sea Ranch is a planned community located in Sonoma,
    California.

1    On November 6, 2007, Vitek's agent, Robert Turietta
2  ("Turietta"), prepared a Loan Document Worksheet indicating that
3  Givant would be eligible for an Adjustable Rate Loan in the
4  amount of $767,000. (<u>Id.</u> at ¶ 13.)  Givant alleges that she
5  informed Turietta that her income was approximately $10,000 a
6  month and that her expenses included a $3,600 a month mortgage
7  payment. (FAC, ¶ 15.)  Givant states that throughout the loan
8  application process she was never told to provide documentation
9  of her income and expenses and she claims she never filled out
10 any loan application documents. (<u>Id.</u>)

11    On or about February 26, 2008, Givant obtained a thirty-year
12 Adjustable Rate Mortgage from Vitek, secured by a Deed of Trust
13 in the amount of $767,000 for the Subject Property.[5] (<u>Id.</u> at
14 ¶ 11.)  Givant contends that she was pressured to quickly close
15 the deal without having the opportunity to thoroughly examine the
16 agreement. (<u>Id.</u> at ¶ 15-16.)  She alleges that a number of terms
17 were not disclosed to her, including the amount of the loan, the
18 terms of the loan, and the information regarding her employment
19 and salary listed in the loan document. (<u>Id.</u> ¶ 17.)

20    Although Givant contends that she never signed her loan
21 application, she admits she signed the final loan documents,
22 albeit under time pressure. (<u>Id.</u> ¶¶ 17-19, 33, 36.)  Notably,
23 the final loan agreement pages include, on each page, a
24 handwritten signature of Kathleen Givant, or the handwritten
25 initials "KM," as well as the date, handwritten as February 26,
26 2008. (<u>See</u> FAC, Exhibit D (loan documents).)

27 _____

28    [5] The Deed of Trust was recorded on March 3, 2008. (FAC
¶ 11.)

3

1   These pages include the information regarding Givant's income and
2   expenses, as well as the terms of the loan.  (Id.)

3        In April 2010, after falling behind on her payments, Givant
4   defaulted on her loan.  (Id. at ¶ 20.)  In May 2010, she states
5   that she applied for a loan modification, through the Home
6   Affordable Modification Program ("HAMP"), with Everhome by means
7   of an authorized third party but claims Everhome never
8   subsequently offered her a loan modification.  (Id. at ¶ 21.)

9        On December 13, 2010, Vitek recorded a Notice of Default on
10  the Property.  (Id. at ¶ 22.)  The Notice of Default stated that,
11  as of December 12, 2010, Givant's loan was in default in the
12  amount of $46,693.53.  (Id.)  In May 2011, Givant alleges that
13  Everhome advised her that the bank would consider payment in the
14  sum of $40,000 to postpone the foreclosure sale.  (Id. at ¶ 24.)
15  She alleges that after she obtained the $40,000, the bank revoked
16  its offer and demanded she pay approximately $90,000.  (Id.)

17       On April 13, 2011, Vitek recorded a Notice of Trustee's
18  Sale, which was set for May 9, 2011, but was thereafter continued
19  to June 12, 2011.  (Id.)  The Trustee's Sale was set for
20  January 12, 2012.  (Id. at ¶ 23.)[6]  On August 30, 2011, Givant
21  states she sent Everhome a "qualified written request" letter
22  pursuant to the Real Estate Settlement Procedures Act ("RESPA")
23  (12 U.S.C. §§ 2601, et seq.), but Everhome did not thereafter
24  respond to her letter.  (FAC ¶¶ 59-63.)
25  ///
26  ///
27

28       [6] It is not clear whether the foreclosure sale occurred.

4

1    On November 3, 2011, Givant filed a complaint in California
2  State Court alleging, inter alia, fraud, violation of Civil Code
3  Section 2932.5, cancellation of instruments, quiet title, breach
4  of contract, violation of RESPA, breach of covenant of good faith
5  and fair dealing, violation of the Truth-In-Lending Act ("TILA")
6  (15 U.S.C. §§ 1601, et seq.), rescission, predatory lending in
7  violation of California's Business and Professions Code § 17200,
8  unfair and deceptive business act practices and preliminary and
9  permanent injunction arising out of a mortgage loan refinance
10 transaction.  (Notice of Removal, ECF No. 1, Ex. 1, p. 1.)

11   The action was thereafter removed to this Court on the basis
12 of federal question jurisdiction over Givant's TILA and RESPA
13 causes of action, and supplemental jurisdiction over her state
14 law claims.  (Id. at ¶ 6.)

15   Givant filed her First Amended Complaint on January 13,
16 2012.  (See FAC, ECF 14.)  On January 13, Vitek filed its Motion
17 to Dismiss (ECF No. 19) and On February 28, Everhome filed its
18 Motion to Dismiss (ECF No. 29.)[7]

19

20   [7] Pursuant to Federal Rules of Evidence 201(b) (authorizing
judicial notice of adjudicative facts 'capable of accurate and
21 ready determination by resort to sources whose accuracy cannot be
reasonably questioned'), both Vitek and Everhome request the
22 Court take judicial notice of several documents.  (Requests for
Judicial Notice ("RJN") (ECF No. 20 and 37)  Specifically, Vitek
23 asks the Court to take judicial notice of the: (1) May 12, 2008
Purchase Advice Letter from Vitek to Thornburg Mortgage (Ex. A)
24 and (2) The Mortgage Electronic Registration Services Milestone
Report for the loan at issue (Ex. B).  (ECF No. 20.)  Everhome
25 asks the Court to take judicial notice of the: (1) Deed of Trust
executed on February 22, 2008 and then recorded on March 3, 2002
26 (RJN, Ex. 1); (2) Notice of Default and Election to Sell Under
Deed of Trust executed on December 9, 2010 and then recorded on
27 December 13, 2010 (Id., Ex. 2); (3) Assignment of Deed of Trust
executed on March 9, 2011 and then recorded on March 16, 2011
28                                         (continued...)

## STANDARD FOR 12(b)(6) MOTION TO DISMISS

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-55 (2007) (internal citations and quotations omitted). Though "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations and quotations omitted).

///

///

---

[7](...continued)
(Id., Ex. 3); (4) Notice of Trustee's Sale executed and then recorded on April 13, 2011 (Id. at Ex. 4); (5) Substitution of Trustee executed on March 10, 2011 and then recorded April 13, 2011 (Id. Ex. 5). Both Vitek's and Everhome's requests are unopposed and are the proper subject of judicial notice. See, e.g., Champlaie v. BAC Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1040 (E.D. Cal. 2009); Lee v. County of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (court may take judicial notice of matters of public record). Accordingly, Vitek's and Everhome's Requests for Judicial Notice (ECF Nos. 20 and 37) are granted.

1   A plaintiff's factual allegations must be enough to raise a
2   right to relief above the speculative level.  Id. (citing
3   5 C. Wright & A. Miller, Federal Practice and Procedure § 1216,
4   pp. 235-36 (3d ed. 2004) ("The pleading must contain something
5   more. . . than . . . a statement of facts that merely creates a
6   suspicion [of] a legally cognizable right of action")).

7   Moreover, "Rule 8(a)(2) . . . requires a 'showing,' rather
8   than a blanket assertion of entitlement to relief.  Without some
9   factual allegation in the complaint, it is hard to see how a
10  claimant could satisfy the requirements of providing not only
11  'fair notice' of the nature of the claim, but also 'grounds' on
12  which the claim rests." Twombly, 550 U.S. at 555, n.3 (internal
13  citations omitted).  A pleading must contain "only enough facts
14  to state a claim to relief that is plausible on its face." Id.
15  at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 677-679 (2009).
16  If the "plaintiffs .  . . have not nudged their claims across the
17  line from conceivable to plausible, their complaint must be
18  dismissed." Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 680.

19  A court granting a motion to dismiss a complaint must then
20  decide whether to grant leave to amend.  Rule 15(a) empowers the
21  court to freely grant leave to amend when there is no "undue
22  delay, bad faith[,] dilatory motive on the part of the movant,
23  . . . undue prejudice to the opposing party by virtue of . . .
24  the amendment, [or] futility of the amendment. . . ." Foman v.
25  Davis, 371 U.S. 178, 182 (1962).  Leave to amend is generally
26  denied when it is clear the deficiencies of the complaint cannot
27  be cured by amendment.
28  ///

7

1 | <u>DeSoto v. Yellow Freight Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir.
2 | 1992); <u>Balistieri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699
3 | (9th Cir. 1990) ("A complaint should not be dismissed under Rule
4 | 12(b)(6) unless it appears beyond doubt that the plaintiff can
5 | prove no set of facts in support of his claim which would entitle
6 | him to relief.") (internal citations omitted).

7 |

8 |                              **ANALYSIS**

9 |

10 |    Because this Court's jurisdiction is based on Givant's
11 | federal TILA and RESPA claims, the Court discusses those first
12 | before turning to a consideration of her state law claims.
13 | Givant's TILA claim (her fifth cause of action) only names Vitek
14 | and her RESPA claim (her third cause of action) only names
15 | Everhome.

16 |

17 |    **A.    Vitek's Motion to Dismiss**

18 |

19 |         **1.    Federal Claim: Givant's TILA Claim is Time-Barred**

20 |

21 |    Givant's TILA cause of action alleges that Vitek violated
22 | TILA by failing to fully inform her of the terms of her loan, as
23 | well as failing to provide her with necessary disclosures related
24 | to the loan.  (FAC at ¶¶ 83-92.)  In essence, this is a fraud
25 | claim: Givant contends that Vitek deliberately failed to inform
26 | her of the terms of her loan, included false information about
27 | her income and expenses, and pressured her to quickly close the
28 | deal without giving her sufficient time to review the documents.

1  (Id. at 13-19, 27-41, 83-92.)   Thus, Givant argues, any
2  limitations period under TILA should not apply because she could
3  not and did not discover Defendants' violations until within the
4  last year.  (Id. at ¶¶ 30, 87.)   Vitek moves to dismiss Givant's
5  TILA claim as time-barred by TILA's one-year limitations period.

6      TILA bars any recovery of monetary damages after one year
7  from the occurrence of the violation.   15 U.S.C. 1640(e)("Any
8  action under this section may be brought . . . within one year
9  from the date of the occurrence of the violation . . ."); see,
10 e.g., King v. State of California, 784 F.2d 910, 913 (9th Cir.
11 1986).   In King, the Ninth Circuit concluded that, as a general
12 rule, the TILA limitations period starts at the consummation of
13 the relevant transaction, but that district courts may use their
14 discretion to evaluate specific claims of fraudulent concealment
15 and toll the statute of limitations when the general rule would
16 be unjust or frustrate the purpose of the Act.   See King,
17 784 F.2d at 915.

18      Here, there is no dispute that Givant did not bring action
19 against Vitek until after TILA's one year limitations period.
20 Rather, Givant argues that because of Vitek's fraud, she did not
21 discover the problems with her loan application until some point
22 during the year before she filed her complaint, so she is
23 entitled to California's three-year limitations period for fraud
24 claims.   California Code of Civil Procedure § 338(d) (three-year
25 statute of limitations for fraud claims runs from time of
26 discovery).   (Opp'n, ECF No. 32, p. 3.)
27 ///
28 ///

To rely on the delayed discovery of a claim, "[a] plaintiff whose
complaint shows on its face that his claim would be barred
without the benefit of the discovery rule must specifically plead
facts to show (1) the time and manner of discovery and (2) the
inability to have made earlier discovery despite reasonable
diligence."  Kelley v. Countrywide Home Loans, 2009 WL 3489422
(E.D. Cal. Oct. 26, 2009) (quoting Fox v. Ethicon Endo-Surgery,
Inc., 35 Cal.4th 797, 808 (2005)).

     As Givant's TILA claim sounds in fraud, she must satisfy
Federal Rule of Civil Procedure 9(b)'s requirement that "a party
must state with particularity the circumstances constituting
fraud."  "A pleading is sufficient under Rule 9(b) if it
identifies the circumstances constituting fraud so that the
defendant can prepare an adequate answer from the allegations."
Neubronner v. Milken, 6 F.3d 666, 671-672 (9th Cir. 1993)
(internal quotations and citations omitted).  "The complaint must
specify such facts as the times, dates, places, benefits
received, and other details of the alleged fraudulent activity."
Id. at 672.

     Givant alleges she signed the final loan documents in
February 2008 and received them four months later – so, in
approximately June of 2008 – but that would still fall outside
California's three-year limitations for fraud.  (FAC ¶ 36.)  Even
assuming California's three-year limitations period for fraud
does apply, Givant must still demonstrate that she could not
reasonably have discovered the fraud until some point within the
last three years before she filed her complaint.
///

10

1    Givant does not plead sufficient facts to allow a reasonable
2    trier of fact to conclude that she did in fact exercise
3    reasonable diligence to discover any fraud.  (See FAC.)  By
4    Givant's own admission, she possessed the challenged loan
5    documents well over three years before she filed her complaint.
6    She offers no satisfactory explanation for why the limitations
7    period should not run from at least the time period she received
8    the documents that she alleges are defective in virtually every
9    material way.  Furthermore, the loan document pages that Givant
10   claims contain incorrect or fraudulent information were, by her
11   own admission, signed or initialed by her on February 26, 2008.
12   Givant claims she was pressured to sign the documents quickly,
13   but the information she now challenges appears clearly on the
14   face of the pages of the loan agreement.  A reasonable amount of
15   diligence would have put Givant on notice of Vitek's alleged
16   fraud at the signing.

17   However, even if the Court assumes that Vitek concealed loan
18   application documents from Givant and then pressured her to sign
19   the final documents so quickly she didn't have time to review
20   them, this does not help her case.  A reasonably diligent person
21   would have been on notice from these suspect actions that there
22   was a problem with the processing of her loan.  Therefore, the
23   Court concludes that, whether applying TILA's one-year statute of
24   limitations or California's three-year limitations period for
25   fraud under Cal. Civ. Pro. § 338(d), the time began to run from
26   at least February 26, 2008, the date Givant signed the final loan
27   documents or, at the latest, from June 2008, when she claims
28   Vitek sent her the final loan documents.

1  In either case, Givant did not bring her action within the
2  limitations period, as she did not file suit until November of
3  2011.

4      The Court also notes that Givant's TILA claim fails to
5  satisfy the heightened pleading requirements for Rule 9(b), as
6  well as the less stringent pleading requirements of Rule 8(a), as
7  interpreted by the Supreme Court in Iqbal and Twombly.  For
8  example, Givant contends that she was not required to provide
9  certain information to Vitek (see, e.g., FAC ¶ 14), but she never
10 states why she should have been required to do so in the first
11 place.  She contends that facts that are clearly and prominently
12 displayed in the loan documents were never disclosed to her,
13 despite the fact that she signed or initialed each page (see,
14 e.g., FAC ¶ 16-19).  Furthermore, she offers no satisfactory
15 explanation for why she could not have discovered Vitek's alleged
16 fraud until at some point within the last year.  A conclusory
17 allegation that she was not given sufficient time to review the
18 loan documents she was signing is simply insufficient to bear the
19 weight of her fraud claims against Vitek.

20     Because Givant's TILA cause of action is barred under either
21 TILA's one-year limitations period or California's three-year
22 limitations period, the Court grants Vitek's Motion to Dismiss
23 this cause of action with leave to amend.[8]

24 _____

25     [8] Givant also seeks to rescind the loan under TILA on the
   basis of Vitek's actions.  (FAC, ¶ 88.)  Vitek claims this is
26 also time-barred.  Rescission claims under TILA expire three
   years after the date of consummation of the transaction or upon
27 the sale of the property, whichever occurs first.  15 U.S.C.
   § 1635(f).  However, equitable tolling does not apply to
28 rescission under this provision regardless of the lender's
                                              (continued...)

**2.    Remaining State Law Claims**

Having dismissed Givant's federal claim against Vitek, the Court determines that her First Amended Complaint presents no basis for federal question or diversity jurisdiction as the Court declines to exercise supplemental jurisdiction over Givant's state law claims pursuant to 28 U.S.C. § 1367(c).  Therefore, all of Givant's remaining claims against Vitek are dismissed with leave to amend.[9]

**B.    Everhome**

Everhome also filed a Motion to Dismiss (ECF No. 29), addressing each claim alleged in Givant's FAC against it.  Again, the Court will again first address Givant's federal claim, here a RESPA claim (her third cause of action), which is brought solely against Everhome.  (FAC ¶¶ 57-67.)

///
///

---

[8](...continued)
disclosures.  <u>King v. State of Cal.</u>, 784 F.2d 910, 914 (9th Cir. 1986) ("Congress placed a three year absolute limit on rescission actions.").  Because the loan was consummated on February 28, 2008 and this action was not filed until November 3, 2011, the claim for rescission under TILA is time-barred as a matter of law.

[9] Although the Court does not reach the merits of Givant's state law claims in this Order, Givant is on notice that these claims are subject to the pleading requirements of Rule 8(a) and, where appropriate, 9(b).  Should Givant decide to amend her complaint, she should make every effort to ensure that her factual allegations and causes of action comply with these standards.

1

2          **1.     Federal RESPA Claim against Everhome**

3

4              **a.    Parties' Contentions**

5

6          On August 30, 2011, Givant alleges that she sent a

7      "qualified written request" ("QWR") to Everhome as permitted

8      under RESPA, 12 U.S.C. §§ 2601 et seq.  (FAC ¶ 59).  Givant

9      contends that Everhome violated RESPA by failing to respond to

10     her QWR pursuant to language in RESPA which mandates lenders

11     respond to a valid QWR, and that they do so within certain time

12     periods.  (FAC ¶¶ 59-62; FAC, Ex. G (Aug. 30, 2011, letter titled

13     "Qualified Written Request").)

14         Givant attached the QWR to her First Amended Complaint,

15     (FAC, ECF No. 14, Exhibit G.)  The QWR includes twenty-four

16     numbered requests, which generally seek information about the

17     terms of the loan, the identities of the holders and servicers of

18     the loan, the history of payments and charges, and copies of

19     various documents (<u>e.g.</u>, "all manuals pertaining to the servicing

20     of this account").  (<u>Id.</u>)  The only statement in Givant's letter

21     that is related to any errors is that, "I suspect violations of

22     the RESPA or of TILA in the processing of certain fees associated

23     with my Loan and Loan Documentation.  Can you please give me a

24     specific breakdown of all the fees and why they were incurred."

25     (<u>Id.</u>)  Without stating any reasons, she also asserts that "I

26     hereby dispute all late fees, charges, inspection fees, property

27     appraisal fees, forced placed insurance charges, legal fees, and

28     corporate advances charged to this account."  (<u>Id.</u>)

                                    14

1    In her First Amended Complaint, Givant contends that she

2  suffered damage as a result of Everhome's failure to respond to

3  her purported QWR letter.  (FAC ¶ 61-63.)  Specifically, she

4  alleges that because Everhome didn't respond to her letter, she

5  was "unable to account for the payments allegedly owed to

6  Defendant" and that this "resulted in increased interest,

7  penalties and fees."  (Id. ¶¶ 62-63.)

8    Everhome claims that Givant's RESPA cause of action does not

9  sufficiently state a claim, as well as because Givant has failed

10  to sufficiently allege that her purported QWR met all of the

11  procedural requirements for such letters set forth in RESPA.[10]

12  (Mot. to Dismiss, ECF No. 36, pp. 20-21.)

13  ///

14  ///

15  ///

16  _____

17    [10] Everhome also argues that Givant's RESPA cause of action
fails because she did not allege that the QWR was received by

18  Everhome, as required by her Deed of Trust.  (Mot. to Dismiss,
ECF No. 36, pp. 20-21.)  Everhome does not deny that it received

19  the letter.  Rather, it argues that Givant failed to plead that
Everhome received the letter in accordance with the terms of the

20  Deed of Trust.  Givant's Deed of Trust provided that "[a]ny
notice in connection with this Security Instrument shall not be

21  deemed to have been given to Lender until actually received by
Lender."  (Request for Judicial Notice ("RJN"), ECF No. 37, Ex. 1

22  at 11 (emphasis added).)  Although RESPA does not appear to
require that a plaintiff plead or otherwise demonstrate that the

23  lender actually received the QWR letter, Everhome's position is,
in essence, that the notice term in the Deed of Trust modifies

24  RESPA to include such a requirement and because Givant did not
allege that Defendants received the QWR, her RESPA claim fails.

25  Everhome does not provide authority that supports this argument,
and the Court is not persuaded by Everhome's bare contention that

26  a lender may add terms to a contract that have the force to
modify the language of a federal statute.  However, the Court's

27  decision on Givant's RESPA claim does not turn on this issue, and
Givant is being given leave to amend, so perhaps Everhome will

28  have another opportunity to engage in this argument at another
time.

1          **b.   RESPA**

2

3          Among other things, RESPA sets forth the duty of a loan

4    servicer to respond to "qualified written requests." 12 U.S.C. §

5    2605(e).[11]  Under RESPA, § 2605(e), a loan servicer has an

6    obligation to act when it receives a QWR from the borrower or

7    borrower's agent "for information relating to the servicing of

8    [the] loan."  § 2605(e)(1)(A).  "'Servicing' means receiving any

9    scheduled periodic payments from a borrower . . . and making the

10   payments of principal and interest and such other payments with

11   respect to the amounts received from the borrower." § 2605(i)(3).

12   RESPA defines a QWR as "written correspondence" that "includes,

13   or otherwise enables the servicer to identify the name and

14   account of the borrower; and . . . includes a statement of the

15   reasons for the belief of the borrower, to the extent applicable,

16   that the account is in error or provides sufficient detail to the

17   servicer regarding other information sought by the borrower."

18   § 2605(e)(1)(B).

19         A plaintiff alleging violation of § 2605 must show: (i) that

20   the servicer failed to adhere to the rules governing a QWR; and

21   (ii) that the plaintiff incurred "actual damages" as a

22   consequence of the servicer's failure.  These damages must flow

23   from the failure of the servicer to provide the information

24   sought by the plaintiff through the QWR.

25   ///

26   ──────────────────────

27         [11] The Dodd-Frank Wall Street Reform and Consumer Act,
     Pub. L. No. 111-203, 124 Stat. 1376 (2010) ("Dodd-Frank Act"),
28   which passed in 2010, amended certain provisions and added
     subsections (k)-(m) to RESPA.

1  Id.; see also Bever v. Cal-Western Reconveyance Corp.,

2  2012 WL 2522563, at *4 (E.D. Cal 2012) (citing cases).  Section

3  2605 permits an aggrieved plaintiff to recover two types of

4  damages: statutory and actual.  Courts may issue statutory

5  damages not to exceed $1,000 in cases where there is a "pattern

6  or practice of noncompliance" with § 2605.  12 U.S.C.

7  § 2605(f)(1).  Actual damages means pecuniary damages.  See,

8  e.g., Schneider v. Bank of America N.A., 2012 WL 761975, *5-6

9  (E.D. Cal. 2012) (citing cases); Singh v. Wash. Mut. Bank, 2009

10  WL 2588885, at 5 (N.D. Cal. 2009) (similar).

11

12              c.   Analysis

13

14              (1)  Actual Damages

15

16      Givant's RESPA claim fails because she does not sufficiently

17  state any actual damages as a result of Everhome's failure to

18  respond to her letter.  See Lal v. American Home Servicing, Inc.,

19  680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) (holding that the

20  loss alleged by lack of response to the QWR must relate to the

21  RESPA violation itself, that filing suit does not count as a harm

22  warranting actual damages, and that a borrower may not recover

23  actual damages for nonpecuniary losses).

24      Here, Givant claims that because Everhome did not respond to

25  her letter, she incurred increased interest, penalties and fees

26  on her loan.  (Id.)

27  ///

28  ///

1   However, Givant did not send QWR letter to Everhome until August
2   of 2011, about sixteen months after she defaulted on her loan in
3   April of 2010, four months after Defendants had recorded a Notice
4   of Trustee's Sale, and after the originally scheduled date of the
5   Trustee's Sale (which was then continued).  Everhome's servicing
6   of Givant's loan had terminated by the date she sent her letter
7   and Plaintiff offers no evidence, beyond a conclusory allegation,
8   that she suffered any actual damages from Everhome's failure to
9   respond to her letter about her defaulted account.

10
11               **2.    The QWR Does Not Relate to Loan Servicing**
12

13        Givant's RESPA claim also fails because she has not
14   demonstrated that her letter sufficiently relates to the actual
15   servicing of her loan.  Again, Givant alleges that she sent the
16   QWR in August of 2011, sixteen months after she defaulted on her
17   loan in April of 2010, four months after Defendants had recorded
18   a Notice of Trustee's Sale, and after the originally scheduled
19   date of the Trustee's Sale.  (FAC. at ¶ 20, 22, 23.)  Her letter,
20   sent long after she had defaulted on her loan, does not appear to
21   be reasonably related to the servicing of the loan.
22        A loan servicer, such as Everhome, only has the obligation
23   to respond to a QWR when the information requested relates to the
24   actual servicing of the loan.
25   ///
26   ///
27   ///
28   ///

1  See Consumer Solutions REO, LLC v. Hillery, 2009 WL 2711264, *9

2  (N.D. Cal. 2009) (QWR insufficient where it "simply disputed the

3  validity of the loan and not its servicing (e.g., not whether

4  [defendant servicer] had failed to credit her for payments [the

5  plaintiff] made not pursuant to the loan)); Phillips v. Bank of

6  Am. Corp., 2010 U.S. Dist. LEXIS 35131 (N.D. Cal. 2010)(finding

7  defendant had no duty under RESPA to respond to plaintiff's QWR

8  because it related to origination and modification of a loan, not

9  its servicing); Esoimeme v. Wells Fargo Bank, 2011 WL 3875881,

10  at *13-14 (E.D. Cal. 2011) (citing cases) ("A QWR must seek

11  information relating to the servicing of the loan; a request for

12  loan origination documents is not a QWR.").

13       Here, Givant sent Everhome her QWR well after the

14  "servicing" stage had ended.  By that time, the loan was

15  indisputably closed.  Furthermore, Givant provides no explanation

16  for why she waited to send her QWR letter until well over a year

17  after she had defaulted on her loan.  Furthermore, her letter

18  does not provide any basis for why she needs the multitude of

19  information she requested, other than the conclusory statement

20  that she suspected "violations of the RESPA or of TILA in the

21  processing of certain fees associated with my Loan and Loan

22  Documentation."  Such a bare allegation, lacking any details as

23  to her concerns, simply does not provide Everhome with sufficient

24  notice as to what errors Givant is concerned with, or when these

25  errors may have occurred.  See RESPA, § 2605(e)(1)(B).

26       Givant's QWR therefore appears to have been an effort to

27  delay the trustee's sale, rather than an effort to obtain

28  information regarding the servicing of her loan.

19

1  Givant's RESPA claim fails to state a claim, therefore Everhome's
2  Motion to Dismiss is granted with leave to amend.

3      Givant's only federal claim against Everhome was the RESPA
4  claim.  Having dismissed Givant's federal claim, the Court
5  determines that her complaint presents no basis for federal
6  question or diversity jurisdiction. The Court declines to
7  exercise supplemental jurisdiction over these claims pursuant to
8  28 U.S.C. § 1367(c).  Therefore, all of Givant's remaining claims
9  against Everhome are dismissed with leave to amend.

10

11                          **CONCLUSION**

12

13      As a matter of law, and for the reasons set forth above,
14  Vitek's Motion to Dismiss (ECF No. 19) is GRANTED with leave to
15  amend.  Everhome's Motion to Dismiss (ECF No. 29) is also GRANTED
16  with leave to amend.

17      Plaintiffs shall file any amended complaint within twenty
18  (20) days of the date this Order is filed electronically.

19      IT IS SO ORDERED.

20
  Dated: July 13, 2012
21

22

23                          MORRISON C. ENGLAND, JR.
                            UNITED STATES DISTRICT JUDGE
24

25

26

27

28

                              20