UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KATHLEEN GIVANT,                      No. 2:11-cv-03158-MCE-JFM

        Plaintiff,

        v.                           <u>MEMORANDUM AND ORDER</u>

VITEK REAL ESTATE INDUSTRIES
GROUP, INC. dba VITEK MORTGAGE
GROUP, a California Corporation;
et al.,

        Defendants.


----oo0oo----

    Defendants Vitek Real Estate Industries Group, Inc.
("Vitek") and Everhome Mortgage Company ("Everhome") have each
filed a Motion to Dismiss Plaintiffs' Second Amended Complaint
("SAC") (ECF No. 53) pursuant to Fed. R. Civ. P. 12(b)(6).[1]
///
///
///
///

_____

        [1] Unless otherwise stated, all further references to "Rule"
or "Rules" are to the Federal Rules of Civil Procedure.

1

1  For the reasons that follow, the Court GRANTS Defendants' Motions

2  to dismiss Plaintiffs' third and fifth claims for relief without

3  leave to amend and refuses to exercise supplemental jurisdiction

4  over Plaintiffs' remaining state-law claims.[2]

5

6                          **BACKGROUND**[3]

7

8       Plaintiff Kathleen Givant ("Givant") alleges that she was

9  the owner of real property in The Sea Ranch,[4] California (the

10 "Property"), which she owned free and clear and which was

11 appraised for $1,180,000.  (SAC ¶¶ 10, 11, 14.)  In November

12 2007, Givant contacted an agent for Vitek, a home mortgage

13 lender, seeking a loan to provide capital for a new business

14 venture.  (Id. ¶ 12.)

15      On November 6, 2007, Vitek's agent, Robert Turietta,

16 prepared a Loan Document Worksheet indicating that Givant would

17 be eligible for an Adjustable Rate Loan in the amount of

18 $767,000.  (Id. ¶ 13.)  Givant alleges that she informed Turietta

19 that her income was approximately $10,000 a month and that her

20 expenses included a $3,600 a month mortgage payment.  (Id. ¶ 15.)

21

22      [2] Because oral argument would not be of material assistance,
   the Court ordered this matter submitted on the briefing.  E.D.
23 Cal. R. 230(g).

24      [3] Unless otherwise noted, the following facts are taken from
   Plaintiff's SAC,(ECF No. 53), and the documents of which the
25 Court previously took judicial notice under the Federal Rule of
   Evidence 201(b) (ECF No. 51, at 5 n.7). For the purposes of this
26 Motion, the Court accepts Plaintiff's facts as true and makes all
   inferences in the light most favorable to Plaintiff.
27

28      [4] The Sea Ranch is a planned community located in Sonoma,
   California.

1   However, throughout the loan application process, she was never

2   told to provide documentation of her income and expenses or to

3   fill out any loan application documents.  (Id.)

4        On or about February 26, 2008, Givant obtained a thirty-year

5   Adjustable Rate Mortgage from Vitek, secured by a Deed of Trust

6   in the amount of $767,000 for the Subject Property.[5]  (Id. ¶ 11.

7   Givant contends that she was pressured to quickly close the deal

8   without having the opportunity to thoroughly examine the

9   agreement.  (Id. ¶ 16.)  She alleges that a number of terms were

10  not disclosed to her, including the amount of the loan, the terms

11  of the loan, and the information regarding her employment and

12  salary listed in the loan document.  (Id. ¶ 17.)

13       Although Givant contends that she never signed her loan

14  application, she admits she signed the final loan documents,

15  albeit under time pressure.  (Id. ¶¶ 17-19, 33, 36.)  Notably,

16  the final loan agreement pages include, on each page, a

17  handwritten signature of Kathleen Givant, or her handwritten

18  initials, as well as the date, handwritten as February 26, 2008.

19  (See SAC, Exhibit D (loan documents).)  These pages include the

20  information regarding Givant's income and expenses, as well as

21  the terms of the loan.  (Id.)

22       In April 2010, after falling behind on her payments, Givant

23  defaulted on her loan.  (Id. ¶ 20.)

24  ///

25  ///

26  ///

27  ────────────────────

28       [5] The Deed of Trust was recorded on March 3, 2008.  (SAC
    ¶ 11.)

3

1    In May 2010, she applied for a loan modification, through the
2    Home Affordable Modification Program ("HAMP"), with Everhome by
3    means of an authorized third party but claims Everhome never
4    subsequently offered her a loan modification.  (Id. ¶ 21.)

5        On December 13, 2010, Vitek recorded a Notice of Default on
6    the Property.  (Id. ¶ 22.)  The Notice of Default stated that, as
7    of December 12, 2010, Givant's loan was in default in the amount
8    of $46,693.53.  (Id.)  In May 2011, Everhome allegedly advised
9    Givant that the bank would consider payment in the sum of $40,000
10   to postpone the foreclosure sale.  (Id. ¶ 24.)  However, after
11   she obtained the $40,000, the bank revoked its offer and demanded
12   she pay approximately $90,000.  (Id.)  On April 13, 2011, Vitek
13   recorded a Notice of Trustee's Sale.  (Id. ¶ 23.)[6]  Givant claims
14   that she first became aware of the loan's deceptive terms after
15   receiving this notice.  (Id. ¶ 37.)

16       On August 30, 2011, Givant sent Everhome a "qualified
17   written request" ("QWR") letter pursuant to the Real Estate
18   Settlement Procedures Act ("RESPA") (12 U.S.C. §§ 2601, et seq.),
19   but Everhome did not thereafter respond to her letter.  (SAC
20   ¶¶ 62-67.)

21       On November 3, 2011, Givant filed a complaint in California
22   State Court alleging twelve causes of action.  (Notice of
23   Removal, ECF No. 1, Ex. 1, at 1.)
24   ///
25   ///
26   ///
27

28       [6] It is not clear whether the foreclosure sale occurred.

4

1   The action was thereafter removed to this Court on the basis of

2   federal question jurisdiction over Givant's Truth-In-Lending Act

3   ("TILA") (15 U.S.C. §§ 1601, et seq.) and RESPA causes of action

4   and supplemental jurisdiction over her state law claims.  (ECF

5   No. 1, at 2.)  Defendants subsequently filed Motions to Dismiss

6   Plaintiff's First Amended Complaint (ECF Nos. 19 and 29), which

7   the Court granted with leave to amend.  (ECF No. 51.)

8        On August 6, 2012, Givant filed her SAC alleging two federal

9   claims (under TILA and RESPA) and six state-law claims arising

10  out of the loan origination transaction.  (ECF No. 53.)

11

12                **STANDARD FOR 12(b)(6) MOTION TO DISMISS**

13

14       On a motion to dismiss for failure to state a claim under

15  Rule 12(b)(6), all allegations of material fact must be accepted

16  as true and construed in the light most favorable to the

17  nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,

18  337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and

19  plain statement of the claim showing that the pleader is entitled

20  to relief" in order to "give the defendant fair notice of what

21  the . . . claim is and the grounds upon which it rests."  Bell

22  Atl. Corp. v. Twombly, 550 U.S. 544, 554-55 (2007) (internal

23  citations and quotations omitted).

24  ///

25  ///

26  ///

27  ///

28  ///

                                5

Though "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations and quotations omitted).

A plaintiff's factual allegations must be enough to raise a right to relief above the speculative level. Id. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Moreover, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Twombly, 550 U.S. at 555, n.3 (internal citations omitted).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009). If the "plaintiffs .  . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570; Iqbal, 556 U.S. at 680.

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.

///

///

Rule 15(a) empowers the court to freely grant leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment. . . ."  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). However, leave to amend is generally denied when it is clear the deficiencies of the complaint cannot be cured by amendment. <u>DeSoto v. Yellow Freight Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir. 1992);  <u>Balistieri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990) ("A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (internal citations omitted).

**ANALYSIS**

Because this Court's jurisdiction is based on Givant's federal RESPA claim (third cause of action) and TILA claim (fifth cause of action), the Court discusses those first before turning to a consideration of her state law claims.

**A.   Plaintiff's RESPA Claim**

In August 2011, Givant allegedly sent a "qualified written request" ("QWR") to Everhome as permitted under RESPA, 12 U.S.C. §§ 2601 et seq.  (SAC ¶ 62).

///

7

1   Givant contends that Everhome violated RESPA by failing to
2   respond to her QWR pursuant to language in RESPA which mandates
3   lenders respond to a valid QWR, and that they do so within
4   certain time periods.  (SAC ¶¶ 63-65; SAC, Ex. G (Aug. 30, 2011,
5   letter titled "Qualified Written Request").)

6        The QWR, which Givant sent to Everhome, includes twenty-four
7   numbered requests, which generally seek information about the
8   terms of the loan, the history of payments and charges, and
9   copies of various documents (e.g., "all manuals pertaining to the
10  servicing of this account").  (Id.)  The only statement in
11  Givant's letter that is related to any errors is that, "I suspect
12  violations of the RESPA or of TILA in the processing of certain
13  fees associated with my Loan and Loan Documentation.  Can you
14  please give me a specific breakdown of all the fees and an
15  explanation of why they were incurred."  (Id.)  Without stating
16  any reasons, she also asserts that "I hereby dispute all late
17  fees, charges, . . . legal fees, and corporate advances charged
18  to this account."  (Id.)

19       As a result of Everhome's failure to respond to her QWR
20  letter, Givant allegedly incurred "increased interest, penalties
21  and fees" and "attorney's fees, postage and the time of her and
22  her son following up."  (SAC ¶¶ 67-70.)  Everhome contends that
23  Givant's RESPA cause of action does not sufficiently state a
24  claim.  (ECF No. 57, at 16-17.)
25  ///
26  ///
27  ///
28  ///

1    Among other things, RESPA sets forth the duty of a loan
2  servicer to respond to "qualified written requests."  12 U.S.C.
3  § 2605(e).[7]  Under § 2605(e), a loan servicer has an obligation
4  to act when it receives a QWR from the borrower or borrower's
5  agent "for information relating to the servicing of [the] loan."
6  § 2605(e)(1)(A).  RESPA defines a "servicer" as "the person
7  responsible for servicing of a loan," and "servicing" refers to
8  "receiving any scheduled periodic payments from a borrower
9  pursuant to the terms of any loan."  § 2605(i)(2)-(3).  RESPA
10 defines a QWR as "written correspondence" that "includes, or
11 otherwise enables the servicer to identify the name and account
12 of the borrower; and . . . includes a statement of the reasons
13 for the belief of the borrower, to the extent applicable, that
14 the account is in error or provides sufficient detail to the
15 servicer regarding other information sought by the borrower."
16 § 2605(e)(1)(B).

17    A plaintiff alleging violation of § 2605 "must show:
18 (i) that the servicer failed to adhere to the rules governing a
19 QWR; and (ii) that the plaintiff incurred 'actual damages' as a
20 consequence of the servicer's failure."  <u>Anokhin v. BAC Home Loan</u>
21 <u>Serv., LP</u>, 2010 WL 3294367, *3 (E.D. Cal. Aug. 20, 2010).  These
22 damages must flow from the failure of the servicer to provide the
23 information sought by the plaintiff through the QWR.  <u>Id.</u>; <u>see</u>
24 <u>also</u> <u>Bever v. Cal-Western Reconveyance Corp.</u>, 2012 WL 2522563, *4
25 (E.D. Cal. June 28, 2012).

---

[7] The Dodd-Frank Wall Street Reform and Consumer Act,
Pub. L. No. 111-203, 124 Stat. 1376 (2010) ("Dodd-Frank Act"),
which passed in 2010, amended certain provisions and added
subsections (k)-(m) to RESPA.

1    Section 2605 permits an aggrieved plaintiff to recover two
2  types of damages: statutory and actual.  Actual damages means
3  pecuniary damages.  <u>See</u>, <u>e.g.</u>, <u>Schneider v. Bank of Am. N.A.</u>,
4  2012 WL 761975, *5-6 (E.D. Cal. Mar. 6, 2012); <u>Singh v. Wash.</u>
5  <u>Mut. Bank</u>, 2009 WL 2588885, *5 (N.D. Cal. Aug. 19, 2009).  "[T]he
6  allegations of a RESPA QWR claim [also] must show that the RESPA
7  violation proximately caused Plaintiff's damages."  <u>Hernandez v.</u>
8  <u>Cal. Reconveyance Co.</u>, 2010 WL 1911244, *3 (S.D. Cal. May 10,
9  2010).  The actual damages allegedly caused by a loan servicer's
10  failure to respond to the QWR must relate to the RESPA violation
11  itself, and the "incorporated damage" of having to file a lawsuit
12  does not count as "actual damages" for RESPA purposes.  <u>Lal v.</u>
13  <u>Am. Home Serv., Inc.</u>, 680 F. Supp. 2d 1218, 1223 (E.D. Cal.
14  2010).

15    RESPA also allows courts to award statutory damages not to
16  exceed $1,000 in cases where there is a "pattern or practice of
17  noncompliance" with § 2605.  12 U.S.C. § 2605(f)(1).  However,
18  Plaintiffs seeking statutory damages "cannot rely simply on stock
19  legal conclusions, but must allege facts that are sufficient to
20  'raise a right to relief above the speculative level.'"  <u>Lal</u>,
21  680 F. Supp. 2d at 1223 (E.D. Cal. 2010).
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

1    **1.    Plaintiff has Failed to Demonstrate Actual Damages**

2

3        Givant asserts that she has incurred two types of actual
4    damages as a result of Everhome's violation of RESPA:
5    (1) increased interest, penalties, and fees on her loan; and
6    (2) attorney's fees, postage expenses and lost time required to
7    follow-up on the QWR letter.  (SAC ¶¶ 67, 70).

8        In its prior Order, the Court rejected Givant's argument
9    that the increased interest, penalties and fees allegedly
10   incurred by Givant were caused by Everhome's failure to respond
11   to the QWR.  (ECF No. 51, at 18.)  As the Court previously noted,
12   Givant did not send her QWR until sixteen months after defaulting
13   on her loan and until four months after Defendants had recorded a
14   Notice of Trustee's Sale.  (Id.)  Thus, by the time Givant sent
15   her QWR, she had already sustained the interest, penalties and
16   fees that the letter disputed.  Thus, Everhome's failure to
17   respond to the QWR did not result in any additional loan-related
18   damages.

19       Second, Givant alleges that she incurred attorney's fees and
20   postage expenses, as well as lost time as a result of Everhome's
21   REPSA violation.  (SAC ¶ 70).  The court in Frison v. WMC Mortg.
22   Corp. recently rejected a similar argument where the plaintiff
23   claimed that she had incurred legal fees and costs as a result of
24   the loan servicer's failure to respond to her QWR.  2011 WL
25   4571753, at *4 (S.D. Cal. Sept. 30, 2011).

26   ///

27   ///

28   ///

11

1   The court explained that "[c]onclusory and speculative

2   allegations about the effects of failure to respond to a QWR's

3   'laundry list' of requests for information are insufficient" in

4   the absence of a showing "how the failure to respond to the QWR[]

5   caused any of these things." (Id.) (emphasis in the original).

6   Givant, like the plaintiff in Frison, has failed to explain how

7   Everhome's failure to respond to the QWR proximately caused her

8   damages.  Additionally, as explained above, costs and expenses of

9   filing a lawsuit do not qualify as actual damages for the

10  purposes of § 2605.  See Lal, 680 F. Supp. 2d at 1223.

11  Therefore, Givant's actual damages claim fails to satisfy RESPA's

12  requirements.

13      Givant also requests statutory damages based on

14  "Defendants'[sic] pattern of behavior." (SAC ¶ 69).  However,

15  the SAC is devoid of any facts demonstrating the alleged pattern

16  of RESPA violations.  When plaintiffs seeking statutory damages

17  "flatly claim a pattern of noncompliance but state no facts," the

18  courts are "not required to accept as true a legal conclusion

19  couched as a factual allegation." Lal, 680 F. Supp. 2d at 1223

20  (internal citations omitted).  Because the SAC lacks the

21  requisite facts necessary to demonstrate a "pattern" of non-

22  compliance, Givant has failed to state a claim for statutory

23  damages under RESPA.

24  ///

25  ///

26  ///

27  ///

28  ///

12

## 2.   **The QWR Does Not Relate to Loan Servicing**

In its prior Order, the Court also stated that Givant's RESPA claim failed for Givant's failure to demonstrate that her letter sufficiently related to the actual servicing of the loan. (ECF No. 51, at 18-19.)   Loan servicers, like Everhome, need only respond to a QWR when the information requested relates to loan servicing.   See Consumer Solutions REO, LLC v. Hillery, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009) (QWR insufficient where it "simply disputed the validity of the loan and not its servicing (e.g., not whether [defendant servicer] had failed to credit her for payments [the plaintiff] made not pursuant to the loan)); Esoimeme v. Wells Fargo Bank, 2011 WL 3875881, *13-14 (E.D. Cal. Sept. 1, 2011) ("A QWR must seek information relating to the servicing of the loan; a request for loan origination documents is not a QWR.").

As alleged, Givant sent the QWR in August of 2011, well after the loan "servicing" stage had ended.[8] ( See SAC ¶¶ 20, 22, 23.)   Givant provides no adequate explanation for waiting to send her QWR until well over a year after she had defaulted on her loan.   (ECF No. 51, at 18.)   Upon termination of the servicing stage, Givant's QWR letter was not reasonably related to loan servicing.   As such, Givant has failed to demonstrate that Everhome was obligated to respond to her letter.

///

---

[8] Givant sent her QWR sixteen months after she defaulted on her loan in April of 2010 and four months after a Notice of Trustee's Sale was recorded.

1    For the reasons set forth above, Givant's RESPA claim fails
2 to state a viable claim for relief.  Thus, Everhome's Motion to
3 Dismiss Plaintiff's third cause of action is granted.  Because
4 Givant has failed to state a viable RESPA claim after being given
5 the opportunity to cure the defects in her complaint, the Court
6 finds that any further leave to amend would be futile and
7 dismisses this claim with prejudice.

8

9 **B.   Plaintiff's TILA Claim**

10

11   As alleged, Defendant Vitek violated TILA by both failing to
12 provide the requisite loan disclosures and insufficiently
13 apprising her of the loan's terms.  (SAC ¶¶ 88-98.)  Givant
14 alleges that Vitek purposefully used incorrect financial details
15 and figures and pressured her to sign for the loan without
16 reading the pertinent documents.  (Id. ¶¶ 13-19, 27-44, 88-98.)
17 According to Givant, Vitek's actions were "willful, knowing,
18 malicious, fraudulent, and oppressive."  (Id. ¶ 97.)  Vitek moves
19 to dismiss Givant's TILA cause of action as time-barred.  (ECF
20 No. 54, at 5.)
21   TILA bars any recovery of monetary damages after one year
22 from the occurrence of the violation.  15 U.S.C. 1640(e) ("Any
23 action under this section may be brought . . . within one year
24 from the date of the occurrence of the violation . . ."); King v.
25 California, 784 F.2d 910, 913 (9th Cir. 1986).  Generally, "[t]he
26 failure to make the required disclosures occurred, if at all, at
27 the time the loan documents were signed."  Meyer v. Ameriquest
28 Mortg. Co., 342 F.3d 899, 902 (9th Cir. 2003).

However, district courts may use their discretion to evaluate specific claims of fraudulent concealment and toll the statute of limitations when the general rule would be unjust or frustrate the Act's purpose.  <u>King</u>, 784 F.2d at 915.

    To rely on the delayed discovery of a claim, "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  <u>Kelley v. Countrywide Home Loans</u>, 2009 WL 3489422, *5 (E.D. Cal. Oct. 26, 2009)(citations omitted).  Consequently, "when a plaintiff fails to allege any facts demonstrating that the TILA violations alleged could not have been discovered by due diligence during the one-year statutory period, equitable tolling should not be applied and dismissal at the pleading stage is appropriate."  <u>Lingad v. Indymac Fed. Bank</u>, 682 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010).

    Plaintiffs alleging TILA claims involving fraud can also utilize a three-year statute of limitations under California Code of Civil Procedure § 338(d).  <u>Newsom v. Countrywide Home Loans, Inc.</u>, 714 F. Supp. 2d 1000, 1014 (N.D. Cal. 2010).  Under the statute, "the three-year period does not begin to run until the plaintiff has actual or constructive notice of the facts constituting the fraud.  Constructive notice is knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud."  <u>Robuck v. Dean Witter & Co., Inc.</u>, 649 F.2d 641, 644 (9th Cir. 1980).

///

15

1    In this case, Givant asserts both that she filed her claim

2  "within the one year statutory period for damages" under TILA,

3  and that the Court should invoke California's three-year

4  limitations period for fraud claims.  (ECF No. 59, at 4.)

5  According to Givant, regardless of which statute of limitations

6  applies, the limitations period began running when she "received

7  the Notice of Trustee's Sale on or about April 13, 2011 wherein

8  [Givant] had reason to believe there was [sic] deceptive terms in

9  her loan."  (SAC ¶ 93.)  However, as alleged, Givant signed the

10  loan documents in February of 2008 and actually received the

11  documents in June of 2008.  (Id. ¶¶ 16, 36.)  Therefore, unless

12  the doctrine of equitable tolling applies, the statute of

13  limitations for Givant's TILA claim alleging inadequate

14  disclosures began running by the end of June 2008, at the latest.

15    While the Court has discretion to toll the statutory period,

16  Givant must demonstrate that she exercised "reasonable diligence"

17  in discovering Vitek's alleged wrongdoing.  See Kelley, 2009 WL

18  3489422, at *5.  In its prior Order, the Court concluded that

19  Givant did not act with reasonable diligence when she failed to

20  discover the alleged fraud upon receiving the loan documents that

21  were "defective in virtually every material way".  (ECF No. 51, at

22  10-12.)  Givant's SAC again fails to provide any satisfactory

23  explanation for why the limitations period should not run from at

24  least the date Givant received the loan documents at issue.

25  Instead, Givant simply states that she first had reason to

26  examine the undisclosed loan terms after reading the April 2011

27  Notice of Trustee's Sale, which showed that the principal loan

28  balance had increased.  (SAC ¶ 93.)

1    Givant has failed to persuade the Court that the statute of
2    limitations should be tolled.  A reasonably diligent person would
3    have read the loan's material terms upon signing, or, at a
4    minimum, after receiving the loan documents.  See Tiqui v. First
5    Nat'l Bank of Ariz., 2010 WL 1345381, *6 (S.D. Cal. Apr. 5,
6    2010).  The information Givant challenges appeared clearly on the
7    face of the pages of the loan documents that Givant signed or
8    initialed on February 26, 2008.  It was not reasonable for her to
9    wait until the Notice of Trustee's Sale before first examining
10   the loan papers and material loan terms.  This is especially true
11   where, as here, a Notice of Trustee's Sale was sent more than a
12   year after the borrower defaulted on the loan and four months
13   after the notice of default was actually recorded.

14   Givant further contends that Vitek coerced her into signing
15   the loan papers by failing to provide ample time to examine the
16   documents.  As the Court explained in its prior Order, a
17   reasonably diligent person would have been on notice from these
18   suspect actions that were was a problem with the processing of
19   her loan.  (ECF No. 51, at 11.)  Thus, the sensible course of
20   action for Givant was to either not sign the loan documents or,
21   at least, to carefully examine the documents when she received
22   them in June of 2008.  Instead, Givant waited nearly three years
23   before familiarizing herself with the material terms of her loan
24   agreement.
25   ///
26   ///
27   ///
28   ///

1    Therefore, the Court concludes that, whether applying TILA's
2    one-year statute of limitations or California's three-year
3    limitations period for fraud under Cal. Civ. Pro. § 338(d), the
4    time began to run, at the latest, in June of 2008, when Givant
5    received the final loan documents.  Because Givant did not bring
6    her action within the limitations period, her TILA claim is time-
7    barred.[9]  Accordingly, the Court grants Vitek's Motion to Dismiss
8    Givant's fifth cause of action.[10]  Because Givant has failed to
9    state a viable TILA claim after being given the opportunity to
10   cure the defects in her complaint, the Court finds that any
11   further leave to amend would be futile and dismisses this claim
12   with prejudice.
13   ///
14   ///
15   ///
16
17          [9] Givant also seeks to rescind the loan under TILA on the
18   basis of Vitek's actions.  (SAC ¶ 94.)  Rescission claims under
     TILA expire three years after the date of consummation of the
19   transaction or upon the sale of the property, whichever occurs
     first.  15 U.S.C. § 1635(f).  However, equitable tolling does not
20   apply to rescission under this provision regardless of the
     lender's disclosures.  King v. California, 784 F.2d 910, 914 (9th
21   Cir. 1986) ("Congress placed a three year absolute limit on
     rescission actions.").  Because the loan was consummated on
22   February 28, 2008 and the first complaint in this action was not
     filed until November 3, 2011, the claim for rescission under TILA
23   is time-barred as a matter of law.

24          [10] Although Givant's SAC explicitly states that only Vitek
     violated TILA, her opposition to Everhome's Motion to Dismiss
25   alleges that Everhome also violated TILA.  (See ECF No. 65, at
     15-16.)  In support of her allegation, Givant again argues that
26   the equitable tolling doctrine applies because she "could not
     . . . discover the fraud by exercise of reasonable diligence
27   before closing."  (Id. at 16.) Even if the Court agreed to
     consider Givant's TILA claim against Everhome, this claim would
28   fail for the reasons stated above.

                                    18

1    **C.    Remaining State Law Claims**

2

3        Having dismissed Givant's federal claims, the Court

4    determines that the SAC presents no basis for federal question or

5    diversity jurisdiction.  The Court declines to exercise

6    supplemental jurisdiction over Givant's state-law claims pursuant

7    to 28 U.S.C. § 1367(c) and remands this action to the Superior

8    Court of California for the County of Sacramento.  <u>See</u> <u>Harrel v.</u>

9    <u>20th Century Ins. Co.</u>, 934 F.2d 203, 205 (9th Cir. 1991) (stating

10   that, after dismissal of all federal claims in an action, "it is

11   generally preferable for a district court to remand the remaining

12   pendent claims to state court.").

13

14                          **CONCLUSION**

15

16       As a matter of law and for the reasons set forth above,

17   Vitek's Motion to Dismiss (ECF No. 54) and Everhome's Motion to

18   Dismiss (ECF No. 57) are GRANTED with respect to federal claims

19   (third and fifth causes of action).  The Court dismisses Givant's

20   federal claims WITHOUT LEAVE TO AMEND because any further leave

21   to amend would be futile.  The Court declines to exercise

22   supplemental jurisdiction over Givant's state-law claims and

23   remands this case to the Superior Court of California for the

24   County of Sacramento.

25   ///

26   ///

27   ///

28   ///

                             19

1      The Clerk of the Court is directed to remand this case to

2 the Superior Court of California for the County of Sacramento and

3 to close the file.

4      IT IS SO ORDERED.

5

Dated: November 15, 2012

6

7

8 MORRISON C. ENGLAND, JR.

  UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28